Mr. Petroff, may it please the Court, I'm Kip Petroff, I'm here with Robert O'Connell representing the appellant in this case. I heard you say in the introductory remarks, Judge Pryor, that this is our chance to tell you what makes our case more complicated or more difficult. I'd like to take a moment to tell you what I think is very unique about this case, probably the only case I've ever seen like this, that I think makes it actually a lot more simple. The facts are that Smith & Nephew, the hip implant manufacturer, referred Mr. Mink to a doctor for a clinical study. The clinical study had a form, a consent form that was signed. The consent form says in so many words, and I quote, this does not waive your rights in the event of neglect. That's in the consent form, which is Exhibit B. It's under financial obligation, which is the section that you would expect any patient to look at. It's talking about financial obligations of this study that the patient is entering into. Which claim is this going toward? It's going towards the misrepresentation. Misrepresentation? Which one? It's really the misrepresentation, but probably more importantly, the failure to inform both Dr. Weistein and the patient. And that's what makes this such a unique case, Your Honor. The patient had a direct relationship with the manufacturer in this case. It's almost unheard of to have a direct relationship with the manufacturer unless there's direct to patient consumer advertising. That does not occur in this case. It's not a direct to patient. So what it goes to, the whole claim that we're claiming, the main claim we're saying is not preempted is negligence. What you do under law, under Medtronics versus law, you look for identity of requirement. Here's the frustrating thing about this case. We're going to talk about the negligence and the strict liability portions of your complaint. I would have thought in just my review of this case that it is possible to plead some kind of theory of negligence per se as a matter of state tort law that tracks the requirements of the federal law that's not something in addition to or different from it. But we've got this now, this Florida second DCA decision that appears to suggest that there is no Florida cause of action about that. For negligence per se, I think you're correct. For negligence. Yes. So what are we to do about that? I know that what matters is what the highest court of the state has said, but we've also said that when the intermediate appellate court issues a ruling on a matter of Florida law, that's a pretty good prediction unless we have something really strong to the contrary that that's how the highest court would rule too. On negligence per se, your honor, I don't believe that there is a cause of action that directly says all you've got to do is show they didn't comply with a federal law and then it's negligence. I agree with that. But even in law, even in Medtronic versus law, it's a Florida case. The Supreme Court talked about the Florida negligence laws, and it specifically referenced the fact that the laws were not designed specifically to deal with medical devices. So in law, the case that's a device case that held nothing as preempted, but it was a 510K, I recognize that. In law, the court talked about the Florida law and said, these are not the kind of laws that are intended to restrict what the federal government's doing. So you still have evidence of negligence. It's still, the pattern jury charge has a negligence cause of action that would apply here. So it's not, I agree, negligence per se wouldn't do it, but if you think about it, when you do have negligence per se, if you've got a speed limit that's 55 and you're going 56, that's negligence per se. But no lawyer would take that and say, well, that's all you've got to prove. You still have to prove negligence. And that's exactly what we're willing to do in this case, is to show negligence. What you show is the identity of the requirements. So is there a requirement that we're saying was violated? If so, is it greater than or in addition to the federal law? And see, the problem is when I look at your complaint, even if I get beyond the problem of that Florida second DCA decision, I understand where you've alleged, there's a shotgun pleading quality here, okay? And you've alleged, oh, you know, this wasn't followed, this wasn't followed, this wasn't followed. But it's not clear to me what you're alleging in terms of duty, breach of duty, proximate cause and injury. Is it that those requirements of the federal law establish a duty? If so, how is that a duty to your client? How has there been a breach of that duty? How has there been some kind of proximate cause of injury? The duty? I don't see where that's really alleged in your complaint. I can go into that, Your Honor. I kind of anticipated that. There are a number of allegations in the pleadings that talk about withholding from doctors, common law negligence, not accurate reflections of existing dangers, failure to update findings. So the allegations are there. But I think more to your point, where's the duty? The duty is in the eight-page approval order. There's a four-page approval order, which is Exhibit A to our complaint, and then there's four pages of general conditions attached to that. That requires the manufacturer, just like under common law, to analyze complaints and see if there's a problem, see if there's a signal, see if the public, the doctors, need to be informed of that. We are alleging a parallel duty right here. Maybe it's a little different because those duties are agreements. The FDA got the company to agree. The four-page approval order is full of you have agreed, you have agreed, you have agreed. But what we do, we're simply taking those duties specifically to analyze complaints and see if there's a problem. That's the duty, and we allege they breached it. So is that, I guess what I would call post-manufacturing duties, is that really the whole of your case as opposed to the device is, in fact, defective because they did not comply with the FDA requirements? And the reason I ask that is, conceptually, that was the easiest for me to understand a parallel claim. The FDA says, your device is approved if you use this material, use this juncture, whatever, and you come in and say, no, you didn't, and here's my evidence. Now, that I can sort of understand. When I read your complaint, I saw almost nothing of that. I saw paragraph H talks about they didn't have the right hardness, but you don't say why. But except for that, it's all what I would call after-production problems. Is that a fair statement? It's close, Your Honor. There's no doubt that the post-marketing analysis is obviously post-approval. We contend the minute that there was approval, from that moment forward, they need to monitor what's going on in the field. I don't think anyone really disputes that. The manufacturing defect, I didn't anticipate that. First of all, the court at the trial level held, you know, she ruled that she thought that the pleading was adequate to put on notice of manufacturing defect. The point about the manufacturing defect is they took a blood test before the surgery was put in. They took a blood test very soon thereafter. Metal ions, which is your body's response to excessive metal, was going skyrocket. We have the product. The claim is that it was defectively manufactured. But isn't that the kind of, you know, reciprocity that you're not pointing out how they're not complying with the FDA? You're just saying, you must not have complied because my guy was hurt. I don't know if it's reciprocity, Your Honor. I know that in lore, the Supreme Court expressly noted that there is a difference, and this is on page 2256, and it's an important one. They noted that the good manufacturing practices regulations take up 32 sections of the Code of Federal Regulations, whereas the medical device regulations are only 10 pages. That's an important concept because the manufacturing regulations are much, much greater than the mere approval of a device design characteristics. I think that's worth pointing out because the manufacturing defect has been alleged. There's a separate paragraph on it. I noted that . . . When you say specifically, I mean, I'm looking at this circuit's Willicke-Gable's case, whereas I read it, they're pointing out with approval that the district court did not allow a claim because a fact finder could find liability even if the manufacturer completely complied. So that's why I was looking in your complaint for specifically how they didn't comply because otherwise, you're saying, I'm not going to prove they didn't comply. I'm just going to prove my guy got hurt. With all due respect, we are at the very early stage of the proceedings just as lore was, and the court pointed that out, that the contours of the case are not known at this early stage. But the fact is, we have plausibly alleged something that doesn't occur absent a manufacturing defect, and that is this drastic poisoning of the system from the metal. That's something that the allegation is that the material was not as hard as it was supposed to be. I agree that that's relatively vague, and if we had more facts, we would allege them. But at this stage, that is all that we have, I have to admit that, as far as manufacturing. I would point out, though, that manufacturing defect is referred to not only as failure to meet the specifications, but also negligence, and it is important to remember the Good Manufacturing Practices Act is way, way longer than the sections that deal with approval. I would point out that the consent to participate, Exhibit B to the complaint, if that's not a contract, then I don't know what could be a contract in this context. In this context, what you do is you look to see, has the manufacturer already said to me that the problem with that contract claim was that the district court treated that as the sum total of the contract, and your complaint alleges that there was an oral aspect to the contract as well, in addition to that. Am I understanding that correctly? You're correct that there was reference to an oral contract, Your Honor. What we've got, though, is that . . . The district court didn't treat this as an  It just said what was in that form is the contract. I think that's the . . . I didn't mean to interrupt. I think that's the appropriate way to go. I realize that cuts against me. The oral contract, frankly, I wouldn't . . . I don't . . . We haven't alleged one. There's nothing more . . . I thought you did allege one in the complaint. It says oral contract three times, Your Honor, but there's never a fact that says the fact of the oral contract was there. You say the written contract is strong. The Exhibit B says . . . I'm out of time, but I'm answering your question. Exhibit B says good clinical outcome for years before this device was recently approved. The device was approved five and a half years before this man signed up for this. They're saying recently approved, good clinical practice. Other cases have come out . . . Yes. Are you in agreement, then, with the district court that the contract claim rises or falls with that form? I think so, yes, Your Honor. Okay. That's helpful. Yes. I'm way beyond my time. That's okay. Do you have any further questions, Judge Martin? Judge Walz? Okay. Thank you. Thank you very much. You'll save your three minutes for rebuttal. Thank you, sir. Mr. Lange. Good morning. May it please the Court. Joseph Lange from Carlton Field. At counsel table with me is David Walz on the brief and also of Carlton Field's. I'll turn right away to the Second District's, Walecki Gable's, opinion, which I think answers every question in this case because it says right on its face that Florida does not have currently a cause of action that satisfies the requirements of a parallel claim. It says in one place that common law damages claims cannot survive preemption, and that's the only state appellate court that has commented on this, and it says that common law damages claims cannot survive preemption. In this context . . . It's not clear to me, though, that that resolves the contract and misrepresentation claims. Okay. I'm happy to address that, but I do think that it clearly addresses all of the torts. Negligence and strict liability, I think you may be right, but I don't understand how that resolves a claim for a breach of contract or misrepresentation that does not depend upon an alleged violation of the Federal Act. Well, I think it does, and let me turn to these clinical studies. With a clinical study, this is required as part of the post-approval. The only reason there is a clinical study at all is that it's required as part of the post-approval order. So I think any so-called contract claim that goes to these post-approval requirements are also expressly preempted the same way that any common law tort claim would be. What the FDA has said . . . The FDA post-approval study requirement require monitoring for 10 years and payment for all to snuff, which is their allegation. It does . . . All of that? It requires that? I'm sorry. The Federal Act requires that? No, I have not said yes to that altogether. What I was going to say is the consent form is consistent with the FDA requirements, and in fact . . . What does that mean? That it just doesn't violate it in some way? Well, it certainly doesn't violate it, but it's consistent with . . . The fact that this study is required by the FDA, and on its face the consent form says that the FDA may let us discontinue this study at any time short of the 10 years. And so right on its face, and they've now said that that is the contract such as it is. They've said that this is the contract on its face that says that this can be discontinued short of 10 years. I don't want to be heard, though, to acquiesce in this idea that there is a contract, and I need to emphasize . . . Well, that's what I thought you might want to say. I do want to definitely . . . Even if that claim is not preempted, I thought your argument might be something about whether that form satisfies the requirements. I certainly want to argue that. As you know, the district court says that the allegations were insufficient as to the breach. The district court also cast serious doubt, although she . . . Tell me whether that's right or not. I know what the district court said. Why do you contend the district court's right about that? They haven't pointed in their allegations to certainly where the breach is on the face of a contract that says that it can be stopped short of 10 years, which apparently is what the allegation of the breach . . . They don't specifically point to where in the contract all of these duties that they say are breached are promised to continue for 10 years, and the face of the contract doesn't establish that. More importantly, I think, is the agency allegations, I think, are on their face insufficient. That goes to the fraud claim, right? No, I think it goes . . . This contract, to the extent it has anything to do with Smith and Nephew, is only connected to Smith and Nephew at all by Dr. Weistein being a so-called agent. This consent form, the way these things are set up is Smith and Nephew needs to stay clear of these studies. Smith and Nephew needs to be clear of these studies and set up an investigator and an investigator review board to organize these studies, and the way they are attempting to I'm making this allegation of agency, and the district judge decided to assume arguendo that there's an agency relationship, but she dropped a footnote that says that she understands why we feel very strongly that there is not. The consent form itself is signed by Dr. Weistein as the investigator, and absent that allegation of agency, traditionally there is no connection at all between the manufacturer and the patient, so they are creating a situation that doesn't exist in the way this is supposed to be set up, and we don't think they've properly alleged a breach. We don't think they've properly alleged the agency relationship, and let me say this before I forget, very important, I think, the district judge actually made a holding at the very end of the opinion that these contract claims, the contract and misrepresentation claims are preempted as a matter of implied preemption, and they have not appealed that. In their initial brief, they do not appeal that point, and that's an independent, sufficient grounds for affirmance that they have not raised as a point on appeal. We said that in our answer brief. They don't come back and say, oh, no, oh, no, we did raise that on appeal. They don't point to where in the initial brief they've raised that as an issue. Instead, their response to us boils down to that the district judge was wrong. It would have been a non sequitur to argue implied preemption, but ... You have obviously a very broad view of express and implied preemption. Can you give me an example of any state law claim that would survive your view of preemption? In Florida? Yes. I think that the Second District Court of Appeal has said that absent the legislature creating a cause of action, making it tortious in Florida to violate a federal regulation, and I can't write that statute for you, but the Second District Court of Appeal has left open the possibility the legislature could create this ... But as of today, there's no state claim, state law claim that survives preemption. I think the Second District Court of Appeal has said that right on the face of their opinion that no common law claim for damages will do it as a matter of state law. But, I mean ... Well, all right. Thank you. Well, I believe that's what the Second District has said, and I believe it's consistent with what every district court in the state in this circuit has said on the same situations. I think it's important to look ... But you said it was the only decision we had. No, no. The only state appellate decision in Florida. There are district ... Okay. Yeah, the district court decision. There are federal district courts throughout Florida that have said the same thing. We have a uniform line of authority from the North Senha case from the Florida Supreme Court, the Wiki Gables case from the Second District, and this whole line of federal district court cases that is uninterrupted, that Florida does not have this type of cause of action. The Second District leaves open the possibility the legislature could create it, but it doesn't exist right now. So, I mean, what do you do with all of these cases from the Supreme Court that talk about state law claims that parallel federal requirements or seek relief under state law for violations of federal law? Without any additions, without any differences, that those survive? Well, Regal does admit of the possibility that those type of claims could exist on a state-by-state, on a state-by-state basis. Some states have said those claims do exist. Almost every jurisdiction says that that is a very, very narrow type claim. I think Judge LaRose says that it's almost a unicorn kind of claim. Some other jurisdictions have found that given states have those types of causes of action, we have a very robust policy in Florida that there is no cause of action that exists for the violation of a statute on its own. That's the North Senha policy, and that's what most of the courts that have said there is no parallel claim in Florida have based that on as they point to the North Senha case. That may not be a robust policy. Basically, kind of an implied right, there's no implied right of action theory in Florida law, is that what that is? I think that what it is is that the sole basis of your claim can't be the violation of a statute unless there's been a legislative intent to create a cause of action. Yes, no implied cause of action exists. There has to be a cause of action where the legislative intent is that that cause of action is for the violation of a statute. In the North Senha case, which is the Murthy case from the Florida Supreme Court, if the plaintiff's theory were right, what was the statute at issue? It was a building code. What the Florida Supreme Court was saying was there's no implied right of action to create a state law. Right. Well, that was a building code case, yes, Your Honor. A state legislative enactment. And what the Florida Second DCA has done is extended that to the federal statute context, right? Following a long line of federal district court cases that have said the same thing based on the North Senha case, but yes, Your Honor. But what the North Senha court said, just to be clear, is they tried to bring it as a negligence, negligence per se type of action. And the Florida Supreme Court said that cause of action doesn't exist. And what is being tried here is to do the same thing under other state law common torts. And the Second DCA says that no common tort, or no common law cause of action for damages can survive preemption. I also would like to note that, as we do in our briefs, the duty to train and the duty to report adverse events, that was not brought to the district judge's attention. That's all new on appeal. Those two claims you can find, you can find a little bit about the claims in the second amended complaint, but nothing said in opposition to the motion to dismiss brings any of that argument that you see in their brief here to the district judge's attention. And we would argue that that was waived for that reason too. If there are no other questions, I would ask for you to affirm the judgment. Thank you. Thank you.  Mr. Metcalf, you have three minutes. Very brief, your honor. I think they're messing with the facts a little bit, and I think it's important to point this out with regard to this study. This study that is Exhibit B to this complaint was a 2011 study that the patient signed. That's five full years after the post-approval. There's no evidence that this is the study that was required. They're saying that. They're saying, they're suggesting to you, oh, it sure looks the same. It's 350 patients, eight sites. But I find it really hard to believe that this is the mandated study five years out that they're still trying to get patients enrolled in. They want you to simply assume that, but you don't assume. The fact is, it's a study that they presented saying it's a recently approved device, enter into it, you'll get all this free care, you'll get all this expert care taking for years and years. There's an expense to that. Mr. Mink canceled his other surgery. He canceled it with a different doctor and a different product. He went with this company. It's in the pleadings because of the availability of that study. It's a benefit. It's a huge benefit. And then they say, well, the company has a right to terminate the study. That's true if this is the FDA mandated study. But the big point is, there's no evidence they terminated this study. They terminated Mr. Mink. There's not one word in this record that says we terminated the study and therefore, Mr. Mink, you're out. If you take a look at the letter, it's exhibit E from the company. Again, direct communications with the consumer, direct communications. It doesn't say we canceled the study. It says we can't find anybody else to monitor you, which if you think about it, we're talking about blood tests. This company, this big company can't find somebody to monitor blood tests and do some x-rays? It'd be like a primary care physician. I mean, there's plenty of surgeons in town. To suggest they can't find somebody, I think, is frankly ludicrous. But the fact is, they terminated Mr. Mink. They decided that they didn't want to use him in the study. I think there's reasons for that, but it's not in the record. But they didn't terminate the study. How could they? If they did, they'd have to follow certain protocols. You don't just dump somebody. Basically, they bait and switched Mr. Mink. They baited him in to taking this device with this company, newly approved, help perpetuate innovation in medicine. That's what he was told. Ten years of future medical and the monitoring from experts. That's pretty important. He didn't get any of that. He went in with that intended. He got none of that. Your Honor, they say we didn't address implied preemption. It's on page 10 of our opening brief. Implied preemption, in so many words, talking about the manufacturing defect. I think it's extremely important to remember what the Supreme Court said in lore, that the... It seems to me, the whole thing about preemption with respect to the contract claim is kind of a red herring. The real question, it seems to me, you tell me if you agree, is to the extent that there's a breach of contract claim, the liability rises or falls with whatever that alleged contract is. Have you stated a claim that you say that form is the contract, right? Yes, sir. Then you're not alleging that there's been some violation of the act that gives rise to the breach of contract claim. It's something about that form that makes it an enforceable contract and it rises or falls with that, right? That argument applies to both the express preemption and the implied preemption claim, right? You're correct. Okay. We have your case. The court will be in recess until tomorrow morning. Thank you.